LEHAN, Chief Judge.
In this case in which defendant was charged with, among other things, loitering and prowling in violation of section 856.021, Florida Statutes (1989), the state appeals the trial court’s order granting defendant’s motion to suppress. We reverse.
The facts, as adduced from the testimony of Officer Whetstone, the only person to testify at the suppression hearing, are as follows. Officer Whetstone testified that he was acting in response to a BOLO, after a complainant had spotted a tall black male, with a large build, dark clothing, and carrying a large black bag, in the backyard or driveway of a neighbor’s house looking inside cars. The subject was in a residential area between the hours of 1:00 and 2:00 a.m.; at the time no one else was seen out and about.
The officer had a K-9 dog begin a track from the point of a car where the complainant had seen the subject. The officer could hear fences up ahead of him, on private property, being hit. The subject then emerged from a dark alley on a bicycle. The subject “stopped and looked in all directions. It was not like he was out looking for traffic either way. He was looking to see if somebody was watching.” Ac *855 cording to the officer, the subject fit the description — including the detail of the large black bag — he had received from the complainant.
When the officer ordered the subject to stop, the subject initially attempted to evade him, but stopped when the dog sounded. The officer told the subject to put his bag down and move away from it, for safety reasons. Without touching the bag and using only a flashlight, the officer was able to see among the top contents of the bag, as it was already open: a bank card, cassette tapes, sunglasses, an envelope and a car title. The address on the envelope was for a residence “right across the street from where [the officer] got the original prowler complaint call”; the car title had a woman’s name on it.
The officer proceeded to ask the subject routine questions concerning his comings and goings. After identifying himself, the subject then embarked upon a suspicious explanation. He said he had just left work at McDonald’s, but in fact he had come from the opposite direction. He then changed his story and said he had come from a friend’s house. But he did not know either the friend’s name or his address. At this point, another officer on the scene read defendant his Miranda rights.
After defendant waived those rights, the officer again questioned him concerning his whereabouts. This time defendant said “he was dropped off by a friend and then went back to working at McDonald’s.” A telephone call to McDonald’s revealed that defendant had never worked there. Neither could he offer a reasonable explanation for why he was in possession of the car title and envelope, other than saying only that he had found them. Defendant ■ was then arrested for loitering and prowling. The state subsequently charged defendant in a six-count information with five counts of burglary (one of a dwelling and four of a conveyance, one of which was nolle prossed) and one count of loitering and prowling. Defendant then filed a motion to suppress, which the trial court granted after a hearing.
We agree with the state that the trial court erred in granting defendant’s motion to suppress. Under the totality of the circumstances in this case, we conclude that defendant’s arrest for loitering and prowling was supported by probable cause. As the supreme court in State v. Ecker, 311 So.2d 104, 106 (Fla.), cert. denied, 423 U.S. 1019, 96 S.Ct. 455, 46 L.Ed.2d 391 (1975) indicated, a defendant may be arrested if his loitering and prowling was in a time, place or manner unusual for a law-abiding individual and his conduct was
under circumstances that warranted a ■ justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity. This alarm is presumed under the statute if, when a law officer appears, the defendant flees, conceals himself, or refuses to identify himself. Prior to any arrest, the defendant must be afforded an opportunity to dispel any alarm or immediate concern by identifying himself and explaining his presence and conduct.
Though the officer himself did not see defendant prowling around parked ears,[1] the K-9 dog did pick up defendant’s scent near a car where the complainant had spotted him. The officer then saw defendant emerge from a dark alley in a furtive manner. Defendant matched the description from the complainant, including the detail about the black bag. When the officer ordered defendant to stop, defendant initially attempted to flee. Only after the K-9 dog sounded did defendant stop.[2] Though he subsequently identified himself to the officer, it is clear enough that his explanation of his whereabouts, which was .fraught with falsehoods and inconsistencies, did nothing to “dispel any alarm or *856 immediate concern.” On these facts, we conclude under Eeker that defendant’s arrest for loitering and prowling was supported by probable cause.
In concluding that probable cause existed to arrest defendant, we are further persuaded by the presence of the contents of the bag in plain view — especially the car title with the woman’s name on it and the envelope with an address for a residence across the street from where the complainant had called. See State v. Banfield, 614 So.2d 551 (Fla. 2d DCA 1993) (male defendant carrying flight bag with name tags showing a woman’s name). Defendant in this case did not provide a satisfactory explanation of why these items were in his possession.
This case appears distinguishable from E.B. v. State, 537 So.2d 148 (Fla. 2d DCA 1989) and T.L.F. v. State, 536 So.2d 371 (Fla. 2d DCA 1988), the two cases on which the trial court relied in granting defendant’s motion to suppress. In E.B., the officer stopped two boys “because they were riding bicycles in the early morning hours and turned abruptly when they saw him.” 537 So.2d at 150. Unlike the instant case, they “did not attempt to elude the officer once he signaled them to stop,” id., and they did not present an immediate concern for the safety of persons or property in the area. In T.L.F., the officer merely observed the defendant “conversing with two other individuals during business hours” near an office building. 536 So.2d at 372.
Rather, the instant case appears analogous to T.J. v. State, 452 So.2d 107 (Fla. 3d DCA 1984), which affirmed adjudications of delinquency for loitering and prowling. Similar to the instant case, the officer in T.J. acted in response to a BOLO, which concerned three black males attempting to snatch purses from vehicles stopped at a traffic light. When the officer, seeing defendants approach a car waiting at a light, ordered them to stop, they initially tried to flee, as did defendant in the instant case. Their explanation to the officer was that they were selling avocados. However, no avocados were to be found. Similarly, in the instant case defendant’s explanation that he had been working at McDonald’s proved false when a call to the restaurant established that he had never worked there.
Reversed and remanded for proceedings consistent herewith.
PARKER and ALTENBERND, JJ., concur.

. Since loitering and prowling is only a misdemeanor, only the officer’s own observations may be considered in determining the existence of probable cause for making a warrantless arrest for that crime. T.L.F. v. State, 536 So.2d 371, 372 (Fla. 2d DCA 1988).

. The stop in this case was proper. See State v. Wise, 603 So.2d 61, 63 (Fla. 2d DCA 1992) (officer has the "authority to temporarily detain a person in order to investigate a reported misdemeanor").