948 So.2d 912 (2007)
Antonio RODRIGUEZ, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-1143.
District Court of Appeal of Florida, Fourth District.
February 14, 2007.
*913 Franklin Prince, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Thomas A. Palmer, Assistant Attorney General, West Palm Beach, for appellee.
STEVENSON, C.J.
Antonio Rodriguez was charged with carrying a concealed firearm after a gun fell from his waistband when police stopped a vehicle he was driving and ordered both him and the passenger from the car. Rodriguez sought to suppress the evidence, arguing that police stopped the car in the absence of a reasonable suspicion of criminal wrongdoing. The trial court denied the motion to suppress and, thereafter, Rodriguez pled no contest to the charge, reserving the right to appeal the trial court's ruling. We find merit in Rodriguez's claim that police lacked the reasonable suspicion required to support the stop and reverse.
Evidence at the suppression hearing established that at 10:47 p.m., on July 21, 2005, an armed robbery took place at a Subway restaurant on Okeechobee Boulevard. A BOLO was issued, describing the suspect as a black male, approximately 5'9" tall, wearing a black hooded shirt or sweater, black baggy pants and black sneakers, and carrying a silver revolver with a brown handle. Police set up a perimeter.
At 11:20 p.m., thirty-three minutes after the robbery, Deputies Ribeiro and Reed joined the perimeter at the intersection of Meridian and Elmhurstsome two blocks to the east and four blocks to the south of the restaurant, a distance of approximately one-quarter mile. Deputies Ribeiro and Reed testified that they were stopping cars as they went by so they could look inside to determine that no one matching the suspect's description was hiding in the vehicle.
Deputies Ribeiro and Reed observed a maroon Explorer traveling east and occupied by two men. The officers observed that the passenger was a black male, who was sweating profusely and nervously staring at the officers. They stopped the vehicle, *914 testifying that the reason they did so was because the passenger fit the description in the BOLO. Ribeiro admitted that, at the time the stop was initiated, he could not determine the passenger's height and "the only thing [he] had" was a black male, sweating profusely, and staring at him. Reed admitted he could not see the sneakers or "immediately" see the black shirt.
Ribeiro approached the passenger side of the vehicle, while Reed went to the rear. Reed observed a black hooded sweater or sweatshirt through the rear window and advised Ribeiro. In the meantime, Ribeiro observed the passenger attempting to conceal a brown bag between the passenger seat and center console. Ribeiro directed the passenger to show his hands and to exit the vehicle. Deputy Thomas arrived as back-up. After Ribeiro removed the passenger and informed Thomas that he saw the passenger moving "something" around in the vehicle, Thomas ordered the driver, Antonio Rodriguez, from the car. As Rodriguez was exiting the vehicle, a gun fell from his waistband. Rodriguez was arrested.
In order for the stop of a vehicle and the temporary detention of its occupants to pass muster under the Fourth Amendment, police must have a reasonable suspicion of criminal activity to justify the stop. See, e.g., State v. Moore, 791 So.2d 1246, 1249 (Fla. 1st DCA 2001). A mere hunch is insufficient. See, e.g., Stennes v. State, 939 So.2d 1148, 1150 (Fla. 4th DCA 2006). The instant case involves a stop as a consequence of a BOLO and, under this circumstance, several factors are relevant in assessing the propriety of the stop: "the length of time and distance from the offense, route of flight, specificity of the description of the vehicle and its occupants, and the source of the BOLO information." Sapp v. State, 763 So.2d 1257, 1258-59 (Fla. 4th DCA 2000) (citing Sumlin v. State, 433 So.2d 1303, 1304 (Fla. 2d DCA 1983)). "Other information which is relevant to determine the validity of the stop includes the time of day, the absence of other persons or vehicles in the vicinity of the sighting, any other suspicious conduct, and other activity consistent with guilt." Id. at 1259.
Salem v. State, 645 So.2d 1023 (Fla. 2d DCA 1994), is instructive. There, at 10:14 p.m., an officer was doing undercover robbery surveillance at a Burger King. The officer received a radio dispatch that a Dairy Queen, one mile from his location, had just been robbed. The suspect was described as a black male, 5'10" tall, medium build, wearing a blue sweatshirt, and carrying a semi-automatic weapon. Id. at 1024. It was not known whether the suspect fled on foot or in a car nor what direction he had fled. At 10:40 p.m., some twenty-six minutes later, the officer at the Burger King observed a car pull into a closed medical office parking lot. The car's occupant turned on the dome light, did something with his hands, turned the light off and then drove to the parking lot of another closed medical building and did the same thing. The only thing the officer could observe about the driver was that he was a black male. After the car pulled out the second time, the officer stopped the car. On these facts, the Second District held that the stop was not supported by a "reasonable suspicion" of criminal activity, noting that while the BOLO may have been relatively specific, the officer was able to verify only that the driver was a black male and that while it was possible to view his actions in the parking lots as suspicious, it was also possible there was an innocent explanation, i.e., checking his wallet or reading directions. Id. at 1025; see also Sanders v. State, 666 So.2d 1035 (Fla. 1st DCA 1996).
After applying the relevant factors to the circumstances of this case, we find that police lacked the requisite reasonable *915 suspicion of criminal activity and, thus, reverse the order denying Rodriguez's motion to suppress. First, while Deputy Ribeiro testified that the source of the BOLO was the officers who responded to the scene of the robbery, the evidence failed to demonstrate whether the responding officers actually observed the suspect or were simply relaying a description provided by some third party. Second, while the BOLO description was relatively specific, the vehicle was stopped because its passenger happened to be a black male within a quarter mile of a robbery that took place a little more than a half hour before. None of the other details, i.e., the passenger's height and clothing, were ascertainable prior to the stop. Third, police had no information that the suspect was traveling in a vehicle and no information concerning the suspect's direction of travel. Finally, the only suspicious activity the passenger was guilty of was sweating and looking at the officer.
Reversed.
STONE and TAYLOR, JJ., concur.