HAZOURI, J.
L.O., a child, appeals from an order withholding adjudication of delinquency for obstructing or resisting a law enforcement officer without violence, and placing L.O. on probation ordering ten hours of community service. We reverse.
The petition for delinquency alleged that on October 80, 2008, L.O. resisted, obstructed, or opposed Matthew Morris of the St. Lucie County Sheriffs Office in the lawful execution of his legal duty, without offering or doing violence to him pursuant to section 843.02, Florida Statutes (2008).
Deputy Morris testified that on October 30, 2008, he was dispatched to an armed robbery in progress at the corner of Angle and Avenue B, in Fort Pierce, Florida. At the time he was dispatched, he was “a couple miles away” and it took him a “couple of minutes” to get to the location. He was one of a number of officers who formed a perimeter in and about the area of the armed robbery. The description given in the BOLO to Deputy Morris was that two black males, one with a black shirt and black pants and one with a red shirt and black pants, were the perpetrators. No further description such as age, height, weight, or other distinguishing characteristics was provided. When Deputy Morris arrived, he set up a perimeter at Orange Avenue and North 39th Street. A canine unit was tracking westbound from the scene. One of the canine officers pointed out a black male wearing a black shirt and black shorts, who was standing at a corner between 37th and 39th Streets. The black male was later identified as L.O., a juvenile. Deputy Morris made contact with L.O. and asked L.O. to identify himself. L.O. responded that he was not giving his name because he “had not done anything wrong.” Deputy Morris asked L.O. if he had any weapons. L.O. did not respond other than to repeat that he had done nothing wrong and did not have to give Deputy Morris his name. Deputy Morris then did a pat-down for weapons and none were found. After L.O. again refused to give his name, Deputy Morris attempted to handcuff L.O., at which time L.O. made an aggressive move of his arm, which Deputy Morris interpreted as an attempt to run away. Deputy Morris then performed a leg sweep, taking L.O. to the ground, and handcuffing him. Deputy Morris placed L.O. in his patrol car, at which time L.O. gave him his name, and again insisted that he had done nothing wrong.
On cross-examination, Deputy Morris testified that when he saw L.O., L.O. was neither running nor sweaty, and was not acting in an unusual or suspicious manner. He was walking on the sidewalk slowly, toward where the canine unit was tracking, i.e., heading in the direction of the scene of the robbery, as opposed to away from the scene of the robbery. The encounter occurred somewhere between 3:30 p.m. and 4:00 p.m. in what Deputy Morris acknowledged was a predominantly black neighborhood. There was no testimony that this was a high crime area. Deputy Morris admitted it would not be unusual to see a black male wearing a black tee-shirt and black shorts, walking the streets of this neighborhood.
The standard of review that applies to a motion for judgment of dismissal in a juvenile case is the same as that which *1293 applies to a motion for judgment of acquittal in a criminal case. See J.P. v. State, 855 So.2d 1262, 1264 n. 1 (Fla. 4th DCA 2008). “In reviewing a motion for judgment of acquittal, we apply a de novo standard of review.” Romero v. State, 901 So.2d 260, 264 (Fla. 4th DCA 2005). “The purpose of a motion for judgment of acquittal is to challenge the legal sufficiency of the evidence, and where the state has brought forth competent evidence to support every element of the crime, a judgment of acquittal is not proper.” Peacock v. State, 498 So.2d 545, 546 (Fla. 1st DCA 1986). “Further, in moving for a judgment of acquittal, the defendant admits not only the facts stated and the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence.” Id.
L.O. argues he is entitled to dismissal of the petition for delinquency because Deputy Morris was not engaged in an investigatory stop, as there was an insufficient basis to support a founded suspicion that L.O. had either committed a crime or was in the process of committing a crime. We agree.
The Florida Supreme Court, in Popple v. State, 626 So.2d 185 (Fla.1993), held that there are three levels of police-citizen encounters. The first level is a consensual encounter, which involves minimal police contact. During a consensual encounter, the citizen is free to leave and does not have to respond to any questions by the police. The second level of an encounter is an investigatory stop in which a police officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that the person has committed, is committing, or is about to commit a crime. An investigatory stop requires a well-founded articulable suspicion of criminal activity, and a mere suspicion is not enough to support a stop. The third level of an encounter is an arrest which requires probable cause that a crime has been committed or is being committed.
In Hunter v. State, 660 So.2d 244 (Fla. 1995), the supreme court held:
A “founded suspicion” is a suspicion which has some factual foundation in the circumstances observed by the officer, when those circumstances are interpreted in the light of the officer’s knowledge. State v. Stevens, 354 So.2d 1244, 1247 (Fla. 4th DCA 1978). Several factors are relevant in assessing the legitimacy of a vehicle stop pursuant to a BOLO: (1) the length of time and distance from the offense; (2) route of flight; (3) specificity of the description of the vehicle and its occupants; and (4) the source of the BOLO information. State v. Wise, 603 So.2d 61, 63 (Fla. 2d DCA 1992); cf. Lachs v. State, 366 So.2d 1223, 1226 (Fla. 4th DCA 1979) (restating factors enunciated by the Fourth DCA in Stevens: time; day of week; location; physical appearance of suspects; behavior; appearance of involved motor vehicle; anything incongruous or unusual in the situation; reliability of BOLO).
Hunter, 660 So.2d at 249.
In the instant case, Deputy Morris had a BOLO which described the suspects as two black males, one wearing a black shirt and black pants, and the other wearing a red shirt and black pants. That was the extent of the information conveyed to him. The age, height, weight, or any other distinguishing characteristics were absent from the BOLO. When Deputy Morris first encountered L.O., L.O. was wearing long black shorts, a black shirt, and was walking alone. L.O. was walking toward the perimeter and, therefore, was farther from the scene of the crime than the police reasonably believed he could be, based on the location of the perimeter. It was the middle of the afternoon and L.O. was *1294 walking down the street in a predominantly black neighborhood. There was no testimony that L.O. was acting in an unusual or suspicious manner, or that he was sweaty from running away from the scene.
Therefore, we hold that Deputy Morris did not have the requisite founded suspicion that L.O. had committed any crime when he was detained. An individual may refuse to identify himself to a police officer when he has not been lawfully detained. See S.N.J. v. State, 17 So.3d 1258, 1260 (Fla. 2d DCA 2009).
We reverse and l-emand and direct the trial court to enter a dismissal of the charge of obstructing or resisting a law enforcement officer without violence, and vacate the order of probation.

Reversed and Remanded.

TAYLOR and CIKLIN, JJ., concur.