DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JONAVON D. GAINES,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D13-686

[February 11, 2015]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Indian River County; Robert L. Pegg, Judge; L.T. Case No. 312012CF001036.

Carey Haughwout, Public Defender, and John M. Conway, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Heidi L. Bettendorf, Assistant Attorney General, West Palm Beach, for appellee.

TAYLOR, J.

Jonavon D. Gaines appeals his conviction for robbery with a firearm. He argues that the trial court erred in (1) denying his motion to suppress because the police lacked reasonable suspicion of criminal activity to stop and detain him, (2) allowing the jury to hear an unredacted version of his taped statement, which contained the detective's opinion as to appellant's guilt and improper evidence of a collateral offense, and (3) denying his motion for a new trial based on the bailiff's improper communications with the jury during deliberations. We reverse and remand for a new trial based on the first two points on appeal.

The robbery victim worked at a convenience store in Vero Beach. After closing the store one night around midnight, the victim got into his car and sat there with the windows down. A man approached him with a gun and demanded the store's money bag. He gave the man the money bag, his eyeglasses, and his wallet, which contained his identification, money cards, and $14. Then the man fled towards the back of the store. The victim called 911.

The victim testified that he told the dispatcher that he was robbed by a "tall black guy." He said he also told the dispatcher that the robber was sixteen or seventeen years old and was wearing a dark colored garment with a hood, like the kind typically worn in winter. The victim testified that he saw the robber's face and that he had seen him before when he came into the store.

After a proffer by the defense, the 911 call was played for the jury. During the 911 call, the following exchange occurred when the dispatcher asked for a description of the suspect:

> [DISPATCHER]: What, what kind of clothes did he wear?
> [THE VICTIM]: Huh?
> [DISPATCHER]: His clothes, like his shirt, what color was his shirt?
> [THE VICTIM]: He was a black guy (inaudible).

The victim also told the dispatcher that the man fled on foot. After the tape was played, he agreed with defense counsel that he never told the dispatcher that the suspect was tall. But, despite evidence to the contrary in the 911 transcript and tape, the victim insisted that he told the dispatcher that the suspect was sixteen or seventeen years old.

Vero Beach Police Officer DeAcetis responded to the crime scene. He testified that the first BOLO sent out merely identified the perpetrator as a black male. A short time later, however, the officer obtained additional information about the suspect from the victim and he relayed it by radio to other police officers. The second BOLO described the perpetrator as a black male, sixteen to seventeen years old, with short cropped hair, wearing a long-sleeved dark T-shirt. The BOLO did not include any information about a vehicle.

Corporal Dominguez and other police officers set up a perimeter around the crime scene. Within about ten minutes of establishing a perimeter, but a half hour or more after the robbery occurred, Corporal Dominguez stopped appellant's gray van about two blocks from the store. He did not see appellant commit any traffic infractions or engage in any suspicious behavior. He stopped appellant because he matched the BOLO description of a young black male with short cropped hair. Although appellant was wearing a white T-shirt instead of a long-sleeved dark shirt, Officer DeAcetis had explained that, based on his experience, people who commit crimes will sometimes change their clothes before they are caught. After

stopping appellant, Corporal Dominguez stood him behind his van until the victim could arrive for a show-up identification.

Before Officer DeAcetis escorted the victim to view appellant, he took him to another show-up. At this first show-up, the suspect was a black man, approximately thirty years old, with curly hair and a beard. During the second show-up, the victim identified appellant as the person who robbed him.

After appellant was arrested, officers found a backpack behind the front passenger seat of his vehicle. The backpack contained an eyeglass case, a handgun, and three articles of dark-colored clothes. The backpack also contained a wallet with the victim's identification and money cards.

Detective Jason Jones interviewed appellant after reading him his *Miranda* rights. When the state offered the taped interview into evidence, defense counsel objected to introducing certain portions of the interview. Appellant moved in limine to redact those portions of the tape in which the detective expressed his opinion that appellant was guilty and untruthful, and that there was more than sufficient evidence to convict him of the robbery.

The prosecutor agreed to mute the portion of the video where the detective asked appellant about driving with a suspended license. But the trial court ruled that the remainder of the interrogation would be permitted because it is not uncommon for detectives to tell suspects that they are lying when they believe that the suspect is not being forthright with them.

The taped interview was played for the jury. At one point, Detective Jones stated:

> You're lying out your mouth. If your mouth is opening, you're lying me. This is (inaudible) bull I think I've ever heard. You're caught with everything at a crime scene. The victim identified you. He got you on video going around [the] damn building.

Appellant responded, "I don't know what you're talking about, sir."

The interrogation continued and appellant repeatedly denied committing the robbery while the detective insisted he was lying. The detective told appellant, "There ain't no judge, jury in this land that's going to believe otherwise."

The following exchange occurred when Detective Jones attempted to collect appellant's DNA:

> (Detective Jones): Yes, you are giving me a hard time.  All right?
> (Appellant): I just want –
> (Detective Jones): This, this stuff –
> (Appellant): -- (audible)
> (Detective Jones): -- here is to try to clear you –
> (Appellant): (Inaudible)
> (Detective Jones): -- and you're doing just the opposite. You're making everything you do guilty, guilty, guilty.
> (Appellant): I ain't guilty, though.  That's the point.
> (Detective Jones): You are guilty.  You're as guilty as, the most guiltiest person I've seen.
> (Appellant): All right.
> (Detective Jones): All right?
> (Appellant): Yes, sir.

When appellant asserted his right to wait for a court order before giving a DNA sample, the detective told appellant that the DNA sample did not matter, stating: "I don't, it makes no difference to me because I got you dead to rights on everything."

The jury found appellant guilty as charged.  The trial court sentenced him to fifteen years in prison with a mandatory minimum of ten years.

### Unlawful Stop and Detention Based on BOLO

In his first point on appeal, appellant argues that the trial court erred in denying his motion to suppress evidence, because the police officers lacked a well-founded, articulable suspicion of criminal activity to stop and detain him.  He contends that the BOLO description of the robbery suspect as a teenaged black male with short cropped hair was too vague and general to warrant his stop and detention.  We agree.

"A trial court's ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness and the court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court's ruling." *Jackson v. State*, 18 So. 3d 1016, 1027 (Fla. 2009) (citations omitted) (internal quotation marks omitted).  The appellate court will accept the trial court's factual findings if they are supported by competent substantial evidence.  *State v. Triplett*, 82 So. 3d 860, 863 (Fla. 4th DCA

4

2011).  However, the trial court's application of the law to the historical facts is reviewed de novo.  *Id.*

To conduct an investigatory stop, a police officer must have "a well-founded, articulable suspicion of criminal activity.  Mere suspicion is not enough to support a stop." *Popple v. State,* 626 So. 2d 185, 186 (Fla. 1993).

In this case, appellant was stopped in his vehicle solely based on a BOLO description.  "Several factors are relevant in assessing the legitimacy of a vehicle stop pursuant to a BOLO: (1) the length of time and distance from the offense; (2) route of flight; (3) specificity of the description of the vehicle and its occupants; and (4) the source of the BOLO information." *Hunter v. State,* 660 So. 2d 244, 249 (Fla. 1995).  "Other information which is relevant to determine the validity of the stop includes the time of day, the absence of other persons or vehicle in the vicinity of the sighting, any other suspicious conduct, and other activity consistent with guilt." *Sapp v. State,* 763 So. 2d 1257, 1259 (Fla. 4th DCA 2000).

Regarding the first factor, appellant was stopped in his van about thirty minutes after the robbery and within two blocks of the robbery location.  However, the BOLO did not give any basis for believing that there was a vehicle involved in the robbery.  The only information given was that the perpetrator fled the scene on foot; nothing was said about a vehicle or his route of travel.

As to the third and fourth factors, the robbery victim provided only a vague, general description of the suspect as a black male between sixteen and seventeen years old with short cropped hair and wearing a long dark-sleeved shirt.  Although appellant was a young black male with short cropped hair, that description could have fit many young black men.  *See M.M. v. State,* 80 So. 3d 1125, 1126-27 (Fla. 4th DCA 2012) (holding that BOLO stating that "two white males had just robbed the victim at gunpoint and fled the area on foot" lacked sufficient specificity to provide the officer with reasonable suspicion to stop the juvenile); *L.O. v. State,* 44 So. 3d 1290, 1293-94 (Fla. 4th DCA 2010) (holding that BOLO description of two black males, one wearing a black shirt and black pants and one wearing a red shirt and black pants, did not provide the requisite founded suspicion for the juvenile's detention); *Sanders v. State,* 666 So. 2d 1035, 1036-37 (Fla. 1st DCA 1996) (BOLO describing robbers of a Wendy's restaurant as "two black males, black shirt and pants and one had a white t-shirt on" did not provide deputy with founded suspicion to stop defendant's automobile); *Strong v. State,* 495 So. 2d 191, 192 (Fla. 2d DCA 1986) (holding that description of a black man wearing dark clothing was too vague to justify a stop); *Sumlin v. State,* 433 So. 2d 1303, 1303-04 (Fla.

5

2d DCA 1983) (stating that a BOLO description of a young black male in his twenties was too vague to justify a stop); *Ross v. State*, 419 So. 2d 1170, 1170 (Fla. 2d DCA 1982) (holding that a BOLO description of a "black male with short cropped hair, wearing a white tee shirt and wearing blue jeans" could have fit many people in the area and therefore was too general to give officers a founded suspicion to justify the stop). Moreover, appellant's clothing at the time of the stop, a white T-shirt, was inconsistent with the BOLO information.

The facts in this case are similar to those in *Rodriguez v. State*, 948 So. 2d 912 (Fla. 4th DCA 2007). There, we held that a BOLO containing a description of a robbery suspect's race, sex, height and clothing but lacking any mention of a vehicle in which the suspect was traveling or information concerning the suspect's direction of travel did not provide reasonable suspicion to stop the car in which Rodriguez was riding. *Id.* at 914-15. A BOLO had been issued for a black male, approximately 5'9" tall, wearing a black hooded shirt, black baggy pants, black sneakers, and carrying a silver revolver. The arresting officer stopped a vehicle in which the defendant was a passenger. As the defendant alighted from the vehicle, a gun fell out of his pocket. The officer testified that at the time of the stop he could not determine whether the defendant fit the description in the BOLO. He said that "the only thing [he] had" was a black male, sweating profusely and staring at him. *Id.* at 914. The vehicle was stopped because the passenger was a black male within a quarter mile of the robbery. *Id.* at 915.

In *James v. State*, 556 So. 2d 791, 793 (Fla. 1st DCA 1990), the First District held that officers did not have reasonable suspicion to stop a man, who did not match the BOLO description, merely because he was a black male traveling in a pickup truck in the general area toward which the suspect had traveled, on foot, several minutes earlier.

Here, the victim initially described the suspect only as a "black male," who fled the scene on foot. After speaking to the responding officer at the scene, the victim added that the suspect was a teenager with short hair, wearing a long-sleeved black shirt. The record shows that the officers did not have a description of the suspect's height until after the show-up.

This case is very similar to *Rodriguez* and *James* in that there was no vehicle description. Moreover, like the defendant in *James*, the suspect in this case fled on foot; appellant was stopped in a vehicle. At the time of the stop, officers had a description of the suspect's race, age and clothes. Appellant met the BOLO description of a teenaged black male but he was not wearing the clothing described by the victim. In any case, "[a] vague

6

description simply will not justify a law enforcement officer in stopping every individual or vehicle which might possibly meet that description." *Sumlin,* 433 So. 2d at 1304. Based on the case law, the description of a teenage black male with short hair wearing a long dark-sleeved shirt was too vague to justify an investigatory stop. Accordingly, the trial court erred in denying appellant's motion to suppress the evidence obtained as a result of the stop.

### *Inadmissible Police Opinion Testimony*

In his second point on appeal, appellant argues that the trial court erred in allowing the jury to hear an unredacted version of appellant's taped interview because it contained the detective's improper opinions concerning appellant's guilt and truthfulness.

When the state offered the taped interview for evidence, defense counsel objected to the introduction of certain portions of the interview wherein the detective repeatedly expressed his opinion that appellant was guilty, that he knew appellant was lying, and that there was more than sufficient evidence to convict him. She argued that these comments by the detective were inadmissible and invaded the province of the jury.

The state responds that the trial court did not abuse its discretion in admitting these police statements because when placed in "their proper context," such statements to a suspect during interrogation could be understood by a "rational jury" to be "techniques" used by law enforcement officers to secure confessions. *See McWatters v. State,* 36 So. 3d 613, 638 (Fla. 2010) (quoting *Worden v. State,* 603 So.2d 581, 583 (Fla. 2d DCA 1992)); *Jackson v. State,* 18 So. 3d 1016, 1031-32 (Fla. 2009). The state posits that the statements were not offered for their truth but to provoke appellant and to observe his reaction and test the credibility of his defense. The state further relies on *Derival v. State,* 58 So. 3d 357 (Fla. 4th DCA 2011), in pointing out that appellant made no equivocal responses that the jury could have misconstrued as an incriminating statement. *See id.* at 360 (finding that there was no substantial danger of unfair prejudice in allowing jury to hear detective's statements where, among other things, the defendant made no equivocal responses to the officer's questions that the jury might have misconstrued).

The standard of review for a trial court's admission of evidence is abuse of discretion. *Padgett v. State,* 73 So. 3d 902, 904 (Fla. 4th DCA 2011). The trial court's discretion is limited by the rules of evidence. *Id.*

7

A jury may hear an interrogating detective's statements about a crime when the statements provoke a relevant response from the defendant being questioned. *Eugene v. State*, 53 So. 3d 1104, 1112 (Fla. 4th DCA 2011) (citing *Jackson*, 18 So. 3d at 1031-32). "When placed in 'their proper context,' an interrogating detective's statements to a suspect could be understood by a 'rational jury' to be 'techniques' used by law enforcement officers to secure confessions." *Id.* (quoting *McWatters*, 36 So. 3d at 637). However, "a witness's opinion as to the credibility, guilt or innocence of the accused is generally inadmissible, [and] 'it is especially troublesome when a jury is repeatedly exposed to an interrogating officer's opinion regarding the guilt or innocence of the accused.'" *Roundtree v. State*, 145 So. 3d 963, 965 (Fla. 4th DCA 2014) (quoting *Jackson v. State*, 107 So. 3d 328, 339-40 (Fla. 2012)); *see also Page v. State*, 733 So. 2d 1079, 1081 (Fla. 4th DCA 1999) ("It is especially harmful for a police witness to give his opinion of a [witness's] credibility because of the great weight afforded an officer's testimony.").

In *Jackson v. State*, 18 So. 3d 1016, 1032 (Fla. 2009), the Florida Supreme Court held that it was not abuse of discretion to admit a recorded interrogation in its entirety. In that case, the police probed the defendant for his response to statements allegedly made by a co-defendant, which statements revealed details of the criminal acts. Before publishing this interrogation to the jury, the court instructed the jury that the officer's statements were only to be considered to establish the context of the defendant's responses and reactions. The supreme court reasoned that redacting the officer's statements would render the defendant's responses incomprehensible. *Id.* at 1032.

Several years later, the Florida Supreme Court held that, where the probative value of the interrogation as a whole is outweighed by the prejudicial effect of the interrogating officer's statements, it is an abuse of discretion to admit the interrogation. *Jackson v. State*, 107 So. 3d 328, 344 (Fla. 2012). In *Jackson*, the interrogating detectives repeatedly expressed their opinion of the defendant's guilt and veracity. However, the majority of the interrogation did not secure a confession or any relevant responses from the defendant. The interrogation thus had minimal probative value, while the detectives' statements concerning their adamant belief in defendant's guilt had a prejudicial impact on the defendant's credibility and invaded the province of the jury. *Id.* at 341, 344.

In *Roundtree*, we addressed an interrogation similar to the one in this case. There, the interrogating officer repeatedly accused the defendant of committing a robbery and expressed his opinion of the defendant's guilt. 145 So. 3d at 965. The defendant maintained his innocence and, based

on the context of the interrogation, we concluded that he did not make any statements that could fairly be interpreted as an admission of guilt under the circumstances. *Id.* at 966. We held that the admission of the officer's opinions as to the defendant's guilt improperly invaded the province of the jury. *Id.* at 967.

Similarly, appellant maintained his innocence throughout his interrogation. As in *Jackson,* 107 So. 3d at 341, the interrogating detective repeatedly expressed his opinion of appellant's veracity. Detective Jones stated several times that appellant was lying and that he was guilty of the robbery charge. Indeed, he said appellant was as guilty "as the most guiltiest person [he had] seen."

As in *Roundtree,* the detective's statements did not provoke any relevant responses because appellant maintained his innocence. Thus, the limited probative value of appellant's statements was outweighed by the prejudicial effect of the detective's opinion as to appellant's guilt. Moreover, the opinion testimony invaded the province of the jury, and appellant's equivocal responses of "All right," when the detective said he was guilty, could be unfairly misconstrued as an admission of guilt.[1]

Because the state has not met its burden of proving beyond a reasonable doubt that the error in admitting the unredacted taped interview did not contribute to the verdict, we cannot say that the error was harmless. *See Tripoli v. State,* 50 So. 3d 776, 781 (Fla. 4th DCA 2010) (stating that the harmless error analysis "places the burden on the [S]tate, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.") (quoting *State v. DiGuilio,* 491 So. 2d 1129, 1135 (Fla. 1986)). Accordingly, appellant is entitled to a new trial.

In light of our reversal and remand for a new trial, we need not address appellant's final point on appeal regarding the bailiff's improper communications with the jury during deliberations.

*Reversed and Remanded for a new trial and with instructions to grant appellant's motion to suppress.*

WARNER and KLINGENSMITH, JJ., concur.

---

[1] We do not address appellant's argument that the unredacted taped statement also included collateral crimes evidence – i.e., that appellant had committed grand theft of his mother's motor vehicle.

*       *       *

*Not final until disposition of timely filed motion for rehearing.*