CORRECTED OPINION
GROSS, J.
On the morning of July 30, 2008, there was a robbery at AMIGO Food Store in Pompano Beach, Florida. During the robbery, gunshots were fired and the store owner was killed. Several 911 calls prompted • law enforcement to broadcast BOLOs about the suspects. Appellant was a passenger in a car that was stopped pursuant to one of these BOLOs, leading to appellant’s arrest. Appellant moved to *474 suppress, arguing the stop was unreasonable and in violation of the Fourth Amendment. The trial court denied appellant’s motion. After a jury trial, appellant was found guilty of first-degree felony murder. We reverse because the officer lacked reasonable suspicion to make the stop.

Standard of Review

“The standard of. review applicable to a,motion to suppress evidence requires that this Court defer to the trial court’s factual findings but review legal conclusions de novo.” Backus v. State, 864 So.2d 1158, 1159 (Fla. 4th DCA 2003). “[A] trial court’s ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness, and the reviewing court must interpret thp evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court’s ruling.” Pagan v. State, 830 So.2d 792, 806 (Fla.2002). Consistent with the standard of review, we review the evidence in the light most favorable to the state.

The Stop

Starting at 9:52 a.m., a few minutes after the robbery, several BOLOs were broadcast. Prior to the first officer’s arrival at the scene, the BOLOs described Haitian males fleeing westbound from the store on foot. From 9:52 a.m. until 10:02 a.m., the police stopped every black male near the convenience store — some were on foot, others on bicycles.
The arresting officer received a radio call at approximately 9:56 a.m. and arrived near the. perimeter of the crime scene within 2-4. minutes. The only BOLO he heard was for “two black males fleeing westbound from the store.”[1] At , the time of the stop, the officer had no further information about the suspects — he had received no information describing clothing or a vehicle.
While driving within a few blocks of the crime scene, the arresting officer saw two black males in a red Dodge Charger trav-elling northbound and then eastbound. The two cars passed one another going in opposite directions. The officer observed the. driver’s dreadlocks and noted that the passenger was seated, in the rear seat furthest away from the driver. The passenger wore a white t-shirt and a large hat the officer later described as an “old grandma church hat, or turban/1930’s flapper hat drawn down to his eyebrows.” Neither the driver nor the passenger made eye contact with the officer, which the officer found suspicious.
Although the arresting officer witnessed no traffic violation, the sum of the odd seating arrangement, the backseat passenger’s funny looking hat, and lack of eye contact, in conjunction with the outstanding BOLO, prompted the officer to make a U-turn and perform a traffic stop. After the officer activated his lights and the vehicle slowed down, the officer noticed a third black male in the front passenger seat. The arresting officer and an assisting officer approached the car with guns drawn.
After the close of the evidence at the suppression hearing, the state argued there was sufficient reasonable suspicion to justify the stop, considering the BOLO together with the officer’s observations and experience. The state argued it was reasonable for the arresting officer to conclude there was an escape vehicle awaiting *475 the suspects. Additionally, under the totality of the circumstances — the proximity of the stop to the crime scene, the rear passenger wearing a hat consistent with concealing his identity, the suspects in the only car on the road at the time of the stop, and a third person, who became visible to the officer once his lights were activated — the state argued there was reasonable suspicion to justify the stop.
Appellant countered that the police were systematically pulling over any black males in the area based on a vague BOLO, and such conduct fails to provide articula-ble facts which warrant a finding of reasonable suspicion. Appellant argued he was not stopped for any infractions, but rather for “driving while black.”
Based on the totality of the circumstances, the trial court denied the motion to suppress finding the stop to be reasonable.

Analysis

“[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.” Illinois v. Wardlow, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (citing Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). “The officer must be able to articulate more than an ‘inchoate and un-particularized suspicion or “hunch”’ of criminal activity.” Id. at 123-24, 120 S.Ct. 673 (quoting Terry, 392 U.S. at 27, 88 S.Ct. 1868). There must be “at least a minimal level of objective justification for making the stop.” Id. at 123, 120 S.Ct. 673.
When deciding if there is sufficient reasonable suspicion to conduct a stop pursuant to a BOLO, factors to consider include “the length of time and distance from the offense, route of flight, specificity of the description of the vehicle and its occupants, and the source of the BOLO information.” Sapp v. State, 763 So.2d 1257, 1258-59 (Fla. 4th DCA 2000). Moreover, “the time of day, the absence of other persons or vehicles in the vicinity of the sighting, any other suspicious conduct, and other activity consistent with guilt” may weigh into the analysis. Id. at 1259. “Whether an officer’s suspicion is reasonable is determined by the totality of the circumstances which existed at the time of the stop and is based solely on facts known to the officer before the stop.” Exantus-Barr v. State, 193 So.3d 936, 939 (Fla. 4th DCA 2016) (quoting Slydell v. State, 792 So.2d 667, 671 (Fla. 4th DCA 2001)) (emphasis added).
When considering these factors, courts evaluate the number of connections between the BOLO and the stopped suspects, the degree of specificity of those connections, and additional suspicious conduct. For example, Exantus-Barr included a BOLO for a “black male, approximately six foot tall, thin build, short-cropped ham, wearing a black shirt, blue jeans, prescription glasses and a black bandana covering his face from the nose down” who had fled south from the crime scene with a stolen iPhone. Id. at 938. This court upheld the traffic stop because the suspects were detained south of the crime scene, an iPhone app was pinpointing the phone’s location, and the stopped individuals were “consistent with the victim’s description.” Id. at 939.
Similarly, State v. Jemison involved significant connections between a BOLO and a traffic stop. 171 So.3d 808, 809-10 (Fla. 4th DCA 2015). The BOLO was for a “white Tacoma pick-up truck, newer model, with dark tinted windows, heading in an unknown direction.” Id. at 809. This court found the traffic stop reasonable because the defendant was stopped in a car that matched the BOLO and the officer *476 who conducted the stop was positioned on the only route of escape from the scene. Id. at 811-12. Furthermore, the officer noticed the defendant circle the neighborhood and cut in front of a car to make a turn, suspicious conduct that added to the totality of the circumstances. Id. at 810.
On the other hand, reasonable suspicion does not arise from a vague BOLO with minimal connections to the person stopped and no other overtly suspicious conduct.
For example, the BOLO in M.M. v. State described “two white males [who] had just robbed the victim at gunpoint and fled the area on foot.” 80 So.3d 1125, 1126 (Fla. 4th DCA 2012). This court held that the description lacked specificity, such as height, weight, age, clothing, and speed or direction of travel, and therefore provided insufficient grounds to stop the defendant. Id. at 1127. Moreover, the officer did not see the defendant engage in suspicious conduct suggesting involvement in the crime. Id.
Likewise, in Rodriguez v. State, this court held that the minimal connections between a BOLO and the defendant did not justify the stop. 948 So.2d 912, 914-15 (Fla. 4th DCA 2007). The BOLO in Rodriguez described a robbery suspect’s race, sex, height, and clothing, and did not mention a vehicle. Id. at 913. Although the BOLO itself was “relatively specific,” the only connection between the BOLO and the defendant prior to the stop was the defendant’s skin color. Id. at 915. “None of the other details, i,e., the passenger’s height and clothing, were ascertainable prior to the stop.” Id. The connections between the defendant and the BOLO were not only minimal, but general.
However, a vague BOLO with minimal connections to a suspect does, not necessarily invalidate a stop;. other suspicious conduct, coupled with a vague BOLO, can create a. reasonable suspicion. For example, flight from the police is one common circumstance that can operate in conjunction with a vague BOLO to-give rise to a reasonable suspicion to stop. Virgo v. State, 931 So.2d 1010 (Fla. 4th DCA 2006) (finding the defendant’s conduct suspicious where, after noticing officers following him, he drove- down a dead end street, immediately, stopped the vehicle, and darted out of the car); Freeman v. State, 450 So.2d 301 (Fla. 5th DCA 1984) (finding defendant acted suspiciously for the time and place and ran when approached by the officers, which added to reasonable suspicion when the defendant matched the general description of the BOLO); see also Wardlow, 528 U.S. 119, 120 S.Ct. 673, Jean v. State, 987 So.2d 196 (Fla. 4th DCA 2008), Other suspicious conduct that contributes to a reasonable suspicion to stop a person includes:
• Profusely sweating. State v. Davis, 849 So.2d 398 (Fla. 4th DCA 2003) (finding that nervous behavior and profuse sweating on a cold evening contributed to reasonable suspicion); see also L.O. v. State, 44 So.3d 1290 (Fla. 4th DCA 2010).
• Evasive driving. Jemison, 171 So.3d 808 (considering the defendant’s driving in circles around a neighborhood as suspicious activity); Young v. State, 33 So.3d 151 (Fla. 4th DCA 2010) (finding that constant lane changing and driving at high rate of speed amounted to reasonable suspicion); & Monfiston v. State, 924 So.2d 61 (Fla. 4th DCA 2006) (finding that driving with car lights off and changing direction immediately after observing the police constituted reasonable suspicion).
• Driving at a high rate of speed. Porter v. State, 765 So.2d 76 (Fla. 4th DCA 2000) (finding reasonable suspicion to stop the defendant who *477 matched the general description of the BOLO and was driving at a high rate of speed).
• Hiding from the police. State v. Leach, 170 So.3d 56 (Fla. 2d DCA 2015) (finding that the totality of the circumstances, including the defendant’s attempt to conceal his identity by hiding behind a car, sufficiently supplemented the vague BOLO, creating a reasonable suspicion to stop defendant).
• Inconsistent or dubious explanations for presence. State v. Gibbons, 617 So.2d 854 (Fla. 2d DCA 1993) (finding reasonable suspicion to stop defendant who matched a generally descriptive BOLO, attempted to flee when ordered to stop, and gave the officer an inconsistent and false explanation for his presence); T.J. v. State, 452 So.2d 107 (Fla. 3d DCA 1984) (finding reasonable suspicion established where the defendant matched a general BOLO and told the officer he was selling avocados but possessed no avocados).
• An anonymous tip predicting future actions ordinarily not easily predicted. Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) (holding anonymous phone tip that defendant would be leaving a specific apartment, at a particular time, in a particular vehicle established reasonable suspicion); State v. Santiago, 657 So.2d 12 (Fla. 2d DCA 1995) (finding reasonable suspicion established where defendants matched a vague BOLO description and the vehicle was in the exact place, at the exact time, as described by the BOLO).
Here, the arresting officer could not properly rely on the lack of eye contact with the occupants of the Dodge to create a reasonable suspicion. Officers often mine suspicion out of eye contact or avoidance of eye contact, so suspects are “suspicious” no matter what they do in the vicinity of a police officer. Compare Thomas v. State, 297 So.2d 850 (Fla. 4th DCA 1974) (holding that eye contact with an officer was not sufficient justification for a stop), Clark v. State, 677 So.2d 903 (Fla. 2d DCA 1996), Parker v. State, 363 So.2d 383 (Fla. 3d DCA 1978), and Vollmer v. State, 337 So.2d 1024 (Fla. 2d DCA 1976) with Lewis v. State, 625 So.2d 84 (Fla. 4th DCA 1993) (finding that avoiding eye contact is not suggestive of criminal conduct), Baggett v. State, 849 So.2d 1154 (Fla. 2d DCA 2003), and In re Forfeiture of $6,003.00 in U.S. Currency, 505 So.2d 668 (Fla. 5th DCA 1987).
As the Eleventh Circuit has stated, not making eye contact while driving is “fully consistent with cautious driving ... to the extent that such an action is suspicious, it in no way gives rise to a reasonable suspicion of illegal activity either alone or in combination with the other circumstances surrounding the stop.” United States v. Smith, 799 F.2d 704, 707 (11th Cir.1986).
Here, the BOLO was vague. Its connection to appellant was minimal — two black male suspects. Vague descriptions do not justify the stopping of any individual who falls under that description. M.M., 80 So.3d at 1127.
Like the cases finding an absence of reasonable suspicion, here the only connections' the officer made between the suspects and the BOLO were the number of suspects (prior to initiating the stop), their race, and gender. The BOLO was otherwise silent to their appearance, mentioned nothing about hair styles, did not include a vehicle, and was inconsistent with the direction of appellant’s travel.
*478 Moreover, there is no indication the arresting officer saw appellant engage in other conduct suggesting “criminal activity [was] afoot.” Wardlow, 528 U.S. at 123, 120 S.Ct. 673. The officer merely noticed two black males in a car, one with dreadlocks and the other sitting in the back seat wearing an odd hat. The officer observed no traffic violations or other suspicious conduct.
The Dodge was on the road about 10 minutes after the crime, during daylight hours, in a generally populated area. This is not suspicious vehicular conduct. There was no other circumstance which could have attenuated the connection between the unlawful stop and the arrest, such as the discovery of an arrest warrant.[2] The vague BOLO and its minimal connections to appellant did not create the reasonable suspicion needed for the stop.
In fact, as the evidence disclosed, the police were stopping every black male in the vicinity of this tragic crime. To uphold the stop, in this case, would be to allow overly generic stops in the area of a crime — i.e., all black males, all Hispanic women — a practice reminiscent of Captain Renault’s instruction in the film Casablanca to “Round up the usual suspects.” The Fourth Amendment does not permit stops based on such minimal information.
Because the stop was without reasonable suspicion, the motion to suppress should have been granted, resulting in suppression of the stop. This includes the fruits of the poisonous tree, that evidence which the state obtained “by exploitation” of the illegal stop, and not evidence come at “by means sufficiently distinguishable to be purged” of the taint of the illegal search. Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
We reverse the conviction and remand for further proceedings. We have considered the other points raised in appellant’s brief and find them to be without merit.
MAY, J., concurs.
CONNER, J., dissents with opinion.

. As police secured the crime scene and continued to speak with eyewitnesses, they gathered more information about the suspects and the BOLOs became more specific. The stop occurred during the ongoing investigation. The arresting officer did not have a more specific BOLO prior to the stop.

. Recently, the United States Supreme Court held the discovery of a suspect’s arrest warrant after an illegal stop, but prior to a search yielding contraband, sufficiently attenuates the connection between the unlawful stop and the evidence seized incident to arrest. Utah v. Strieff, — U.S. -, 136 S.Ct. 2056, 2063, 195 L.Ed.2d 400 (2016). As such, suppression of the defendant’s contraband was unwarranted, despite the stop being unlawful. Id.
In 2006, the Florida Supreme Court similarly ruled that "whether evidence seized in a search incident to an arrest based upon an outstanding warrant discovered following an illegal stop is to be suppressed is to be answered by analyzing the three factors set forth in Brown [v. Illinois, 422 U.S. 590, 595, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) ].” State v. Frierson, 926 So.2d 1139, 1145 (Fla.2006). The holding in Frierson is entirely consistent with Strieff.