DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JEFTY JOSEPH,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D18-538

[June 5, 2019]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; John S. Kastrenakes, Judge; L.T. Case No. 50-2013-CF-012488-BXXX-MB.

Antony P. Ryan, Regional Counsel, and Louis G. Carres, Assistant Conflict Counsel, Office of Criminal Conflict and Civil Regional Counsel, West Palm Beach, for appellant.

Ashley B. Moody, Attorney General, Tallahassee, and Allan R. Geesey, Assistant Attorney General, West Palm Beach, for appellee.

CIKLIN, J.

Jefty Joseph appeals his convictions for first-degree murder with a firearm, robbery with a firearm, kidnapping with a firearm, and grand theft of a motor vehicle. He specifically challenges the trial court's denial of his motion to suppress. We affirm.

A citizen informant called 911 and reported that three men -- two black men with dreadlocks and one white man -- went into an abandoned house, a shot was fired, and only the two black men came out. The informant also provided a description of a car and its license plate number. Law enforcement officers responded to the scene, observed the car described in the BOLO parked in a residential driveway approximately one half of a mile from the abandoned home, and confirmed that its license plate number matched the one given in the BOLO. The homeowner came outside and yelled to an officer that the car did not belong to him. He reported that two black males came from the car and were walking east. Joseph and his co-defendant, black men with dreadlocks, were spotted approximately

25 to 30 yards from the car walking east. No other people were around. A law enforcement officer drew and pointed his weapon and ordered them to stop. Joseph stopped and was placed in handcuffs, but the co-defendant fled. Shortly thereafter, Joseph was tentatively identified by a witness at a show-up. He was arrested and searched, and some of the victim's belongings were found in his pockets.

Prior to trial, Joseph moved to suppress evidence of the victim's possessions. His motion was denied. The jury returned a verdict of guilty as charged and he was sentenced to life in prison.

Joseph contends that several aspects of his search and seizure were unconstitutional. We disagree.

"Whether an officer's suspicion is reasonable [to support an investigatory stop] is determined by the totality of the circumstances which existed at the time of the stop and is based solely on facts known to the officer before the stop." *Exantus–Barr v. State*, 193 So. 3d 936, 939 (Fla. 4th DCA 2016) (quoting *Slydell v. State*, 792 So. 2d 667, 671 (Fla. 4th DCA 2001)).

First, the initial stop of Joseph was supported by reasonable suspicion, as he and the co-defendant matched the physical description of the suspects provided by a citizen informant, they were apprehended shortly after the crime and near the abandoned house, and they were the only two people outside in the crime scene area. *See State v. Maynard*, 783 So. 2d 226, 228 (Fla. 2001) (explaining that if the source of information contained in a BOLO is "a citizen informant, then the information from the tip . . . would be considered at the high end of the reliability scale"); *Sanchez v. State*, 199 So. 3d 472, 475 (Fla. 4th DCA 2016) (explaining that relevant circumstances in determining the existence of reasonable suspicion to justify a stop may include the length of time and distance from the offense, and the absence of other persons in the vicinity of the offense, among other things). The fact that his shirt was a different color than was originally reported by the informant was insufficient to dispel suspicion, as he may have merely discarded the other shirt.

Second, it was reasonable for the officer to draw his weapon and place Joseph in handcuffs because he was suspected to be armed and his co-defendant fled. The drawn weapon and handcuffs did not convert the encounter into an arrest. *See Reynolds v. State*, 592 So. 2d 1082, 1084 (Fla. 1992) ("Courts have generally upheld the use of handcuffs in the context of a *Terry* stop where it was reasonably necessary to protect the officers' safety or to thwart a suspect's attempt to flee."); *State v. Leach*,

170 So. 3d 56, 61 (Fla. 2d DCA 2015) (finding it was reasonable for officers to draw their weapons where defendant was a felony suspect, hiding at night, and officers could not determine whether he was armed, and noting that "[l]eaving their weapons holstered . . . would have put the officers at an unnecessary risk").

Finally, the state proved by the searching detective's testimony that the search occurred after Joseph's arrest and was thus a valid search incident to arrest. The searching detective explained that department policy was that an individual is in custody when he is going to be taken to headquarters, and then he inventories what is on their person, and that he "in fact d[id] that with Mr. Joseph, inventor[ied] his pockets, before [he] took him up to turn him over to the detectives" at headquarters. *See Pagan v. State*, 830 So. 2d 792, 806 (Fla. 2002) (noting that, on appellate review, "the reviewing court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court's ruling").

Accordingly, the evidence was obtained in a valid search and we affirm the trial court's denial of the motion to suppress.

*Affirmed.*

MAY and KLINGENSMITH, JJ., concur.

* * *

***Not final until disposition of timely filed motion for rehearing.***

3