844 So.2d 659 (2003)
The STATE of Florida, Appellant,
v.
Jean R. GELIN, et al., Appellee.
Nos. 3D02-722, 3D02-721, 3D02-724, 3D02-725, 3D02-723.
District Court of Appeal of Florida, Third District.
March 19, 2003.
Rehearing Denied May 14, 2003.
*660 Charles J. Crist, Jr., Attorney General, and John D. Barker, Assistant Attorney General, for appellant.
Bennett H. Brummer, Public Defender, and Howard K. Blumberg, Assistant Public Defender, for appellee.
Before LEVY, GERSTEN, JJ., and NESBITT, Senior Judge.
LEVY, Judge.
The State appeals from an Order granting defendants' Motion to Suppress. We agree with the State that Porter v. State, 765 So.2d 76 (Fla. 4th DCA 2000) is controlling and, accordingly, reverse.
A trial court's ruling on a Motion to Suppress is clothed with a presumption of correctness and the reviewing Court must view the evidence, any reasonable inferences, and any deductions in a manner according great deference to the trial court's ruling. See Connor v. State, 803 So.2d 598, 605 (Fla.2001)(quoting Murray v. State, 692 So.2d 157, 159 (Fla.1997), and citing Walker v. State, 707 So.2d 300, 311 (Fla.1997)); State v. Perez, 789 So.2d 527, 528 (Fla. 3d DCA 2001); Shannon v. State, 753 So.2d 148, 149 (Fla. 3d DCA 2000). However, where, as in the instant case, the Court's inquiry involves mixed questions of law and fact that ultimately determine constitutional rights, appellate courts must use a two-step approach, deferring to the trial court on the questions of fact, but conducting a de novo review of the constitutional issue. See Connor v. State, 803 So.2d 598, 605 (Fla.2001).
At the outset, we conclude that the BOLO provided Detective King, a Miami Beach police officer, and his colleagues with the reasonable suspicion necessary to follow and ultimately stop the defendants. See Hunter v. State, 660 So.2d 244, 249 (Fla.1995); see also State v. Goebel, 804 So.2d 1276, 1277 (Fla. 5th DCA 2002). The Florida Supreme Court has previously outlined several factors relevant in assessing the legitimacy of a vehicle stop pursuant to a BOLO, including: "(1) the length of time and distance from the offense; (2) route of flight; (3) specificity of the description of the vehicle and its occupants; and (4) the source of the BOLO information." Goebel, 804 So.2d at 1277 (citing Hunter, 660 So.2d at 248). In the instant case, Detective King received a BOLO regarding a crime committed within Miami Beach City limits when he had traveled less than one mile outside the Miami Beach city limits. At the time of the BOLO, Detective King was headed westbound on the MacArthur Causeway on his way home from an off-duty detail. The detective was in an unmarked police van, in full uniform and in possession of a police radio. The BOLO description identified a white van with two black males who were involved in a robbery inside the City of Miami Beach city limits.
*661 In response to the BOLO, Detective King pulled over on the MacArthur Causeway because he believed, in light of the location of the robbery, that the individuals would leave the beach area through the MacArthur Causeway. As expected, a white van, meeting the BOLO description, and heading westbound on the MacArthur Causeway, passed the detective. The detective immediately began to pursue the van. The detective testified that he advised the dispatcher that he was behind the vehicle described in the BOLO. The dispatcher then advised him that "intercity" (back-up) would be notified. The detective continued to follow the van until it came to a dead end where the detective stopped his vehicle behind the white van, exited his vehicle, and identified himself as the police. He testified that the van began to back up until it hit a curb, at which point the detective saw the headlights of other police officers' vehicles. Upon the arrival of the other officers, the driver and passengers surrendered. Defendants were immediately removed from the vehicle and handcuffed. The defendants were in a white van as described in the BOLO, the only variation being that there were additional suspects in the back cargo area of the vehicle.
The issue thus becomes whether, in light of his location at the time of the BOLO, Detective King was in fresh pursuit of the defendants within the meaning of Section 901.25, Florida Statutes. We conclude that he was. Generally, an officer does not have any official power to make an arrest outside the officer's jurisdiction. See Porter v. State, 765 So.2d 76, 78 (Fla. 4th DCA 2000); State v. Sobrino, 587 So.2d 1347, 1347 (Fla. 3d DCA 1991). However, pursuant to Section 901.25, Florida Statutes, an arrest made outside the officer's jurisdiction can be validated.
Section 901.25, Florida Statutes, governing the concept of fresh pursuit and arrests outside the jurisdiction, provides:
(1) The term "fresh pursuit" as used in this act shall include fresh pursuit as defined by the common law and also the pursuit of a person who has committed a felony or who is reasonably suspected of having committed a felony. It shall also include the pursuit of a person suspected of having committed a supposed felony, though no felony has actually been committed, if there is reasonable ground for believing that a felony has been committed. It shall also include the pursuit of a person who has violated a county or municipal ordinance or chapter 316 or has committed a misdemeanor.
(2) Any duly authorized state, county, or municipal arresting officer is authorized to arrest a person outside the officer's jurisdiction when in fresh pursuit. Such officer shall have the same authority to arrest and hold such person in custody outside his or her jurisdiction, subject to the limitations hereafter set forth, as has any authorized arresting state, county, or municipal officer of this state to arrest and hold in custody a person not arrested in fresh pursuit.
§ 901.25, Fla. Stat. (emphasis added). Thus, under the fresh pursuit doctrine, an officer may pursue a suspect beyond the jurisdictional limit so long as certain conditions are met. Fresh pursuit encompasses: "1) that the police act without unnecessary delay; 2) that the pursuit be continuous and uninterrupted; and 3) that there be a close temporal relationship between the commission of the offense and the commencement of the pursuit and apprehension of the suspect." Porter, 765 So.2d 76, 80 (Fla. 4th DCA 2000). As already noted, Detective King spotted the defendants within minutes of hearing the *662 BOLO about a crime that occurred within his jurisdiction, and immediately contacted dispatch to advise that he was in pursuit. Detective King maintained close pursuit of the defendants until they came to a dead end, which forced them to stop.
In Porter, which we find to be persuasive, the Fourth District affirmed the trial court's findings that Pompano Beach officers were in fresh pursuit of the defendants at the time they made the arrest outside of their jurisdiction in Fort Lauderdale. See Porter, 765 So.2d at 78-79. Porter involved Pompano Beach on-duty officers who responded to a BOLO regarding a robbery that occurred within their jurisdiction, but a few miles from the entry into the City of Fort Lauderdale. Based on information from dispatch and an offduty police officer that the BOLO-described vehicle was observed getting on I-95 in a southbound direction, the officers entered I-95 to locate the vehicle. The officers did not initially observe the vehicle and the defendants until they were inside Fort Lauderdale city limits. The trial court noted that the area was not far in time or distance from where the robbery occurred and that the route pursued by the officers was a logical travel route for the perpetrators to take. The court therefore found that "[o]nce in pursuit of the vehicle due to its match of the description given in the BOLO, the officers were in hot or fresh pursuit." Porter, 765 So.2d at 79.
It is undisputed that Detective King's off-duty status in the instant case is irrelevant to his authority and obligation as an officer. See, e.g., Huebner v. State, 731 So.2d 40, 43-44 (Fla. 4th DCA 1999); Metropolitan Dade County v. Norton, 543 So.2d 1301, 1302 (Fla. 3d DCA 1989). Nevertheless, defendants argue that Porter is distinguishable because the BOLO in Porter was received by officers located within the jurisdictional limits. We conclude that these facts are a distinction without a difference. If, as defendants' counsel concedes, Detective King's stop would have been appropriate if Detective King received the BOLO while within Miami Beach city limits, to conclude that the stop was illegal where Detective King was just outside the city limits when he heard the BOLO, and where his testimony reflects that he contacted fellow officers who ultimately effectuated the detention of the defendants, is illogical.
In our view, the instant case is on all fours with Porter. First, as in Porter, an off-duty officer, Detective King here, observed the BOLO-described vehicle and contacted his department regarding the suspects' direction. Moreover, as in Porter, the responding officers, or on-duty officers, did not locate the suspects until they were outside their jurisdiction. The only fact not present, but not necessarily absent, in Porter is the role of the off-duty officer who initially observed the suspects. In the instant case, Detective King was the first officer to locate the suspects and immediately contacted his department which, at the direction of Detective King, arrived to effectuate the stop at the instant the suspects were cornered by their own actions, i.e., driving into a dead-end. In sum, we conclude that the stop of the defendants was proper in light of the fresh pursuit doctrine. Accordingly, the trial court's Order granting defendants' Motion to Suppress is reversed and the matter remanded for further proceedings.
Reversed and remanded.