WARNER, J.
Appellant, Franklin “Frankie” Monfi-ston, challenges his conviction of attempted voluntary manslaughter. He raises three issues: (1) whether the court erred in denying his motion to suppress; (2) whether the court erred in admitting hearsay evidence as an excited utterance; and (3) whether the court failed to conduct a Faretta[1] inquiry when appellant requested to represent himself. We affirm as to all issues, remanding only to correct a clerical error in the judgment.
On the day of the incident, Carl Roche, the victim, attempted to sell drugs to Laurent Adjuste, one of Monfiston’s co-defendants, and slapped him during the attempted transaction. Later that evening, a dark colored Ford Expedition slowly passed by Roche who was on the street *63 with several other acquaintances. The Expedition first passed them and then came back. Frankie and two other men emerged from the vehicle, all carrying guns. They told everyone else standing around to leave if they did not want to get hurt. Roche knew Frankie, the appellant, because Roche was close to Frankie’s cousin. The three individuals, including Monfi-ston, threatened Roche and referenced the incident earlier in the day where Roche slapped Adjuste. They began beating him and shot him several times. He was shot in his legs and torso. After about four shots were fired, the men returned to the vehicle and sped away.
Officer Patrick O’Brien responded to a call and arrived at a house where several people were standing around Roche, who was lying on the ground bleeding. O’Brien believed the injuries were consistent with gunshot wounds. O’Brien began his investigation, trying to ascertain what had occurred, but no one at the scene would speak with him. Approximately ten minutes after the shooting, the officer was directed to a house where he encountered George Davis, Roche’s cousin. Davis told the officer that a Ford Expedition with dark tint pulled up and three black males came out of the vehicle with guns. A fourth individual stayed in the car. The three men approached the group, and told them “if you don’t want to get hurt, you better take off.” Davis and everyone else, except for Roche, took off. Davis told the officer that the vehicle was heading north when it left the scene.
O’Brien sent a BOLO, and within twenty minutes another officer saw a dark Ford Expedition traveling northbound a few miles from the scene of the shooting. Initially, the officer did not know how many people were in the vehicle. However, he witnessed the lights on the vehicle turn off as it continued northbound. He then saw the vehicle turn into a parking space, and observed a black male driver open the door and look back at the officer’s vehicle. The driver then turned the car lights back on and continued southbound. The officer initiated a stop, and he was then joined by other officers.
Appellant and his three co-defendants testified at the motion to suppress hearing that they were occupants of the vehicle when it was pulled over. The officers searched the vehicle and found three guns in the car. Based upon the testimony, the trial court denied the motion to suppress the evidence found in the vehicle, finding that the officers had reasonable suspicion for the stop.
With respect to the motion to suppress, viewing the evidence in the light most favorable to the state, we conclude that the officers had reasonable suspicion to stop the vehicle. Although the BOLO did not provide significant details, it matched the description of the vehicle stopped, a dark-colored Ford Expedition. Also, relatively soon after the incident, the officer observed the vehicle traveling in the direction indicated by the BOLO. Most importantly, the officer observed suspicious behavior in that the vehicle traveled for a distance without its lights on. After the driver stopped the vehicle and observed the officer behind him, he immediately started out in a different direction. Under these circumstances, we agree that there was reasonable suspicion to stop the vehicle. See State v. Vance, 692 So.2d 270 (Fla. 5th DCA 1997); State v. Reyes, 680 So.2d 1092 (Fla. 3d DCA 1996); Pierre-Louis v. State, 682 So.2d 669 (Fla. 4th DCA 1996); and State v. Setzler, 667 So.2d 343 (Fla. 1st DCA 1995).
During the trial, over appellant’s hearsay objection, O’Brien was allowed to testify as to what Davis told him at the scene. The court permitted the testimony *64 based upon the excited utterance exception to the hearsay rule. § 90.803(2), Fla. Stat. The supreme court’s opinion in Stoll v. State, 762 So.2d 870, 873 (Fla.2000), explains the excited utterance exception:
[I]n order for an excited utterance to be admissible, the following requirements must be met: (1) there must have been an event startling enough to cause nervous excitement; (2) the statement must have been made before there was time to contrive or misrepresent; and (3) the statement must have been made while the person was under the stress of excitement caused by the startling event.
Here, it is apparent that the officer was on the scene investigating a crime and trying to find witnesses to it. He found George Davis across the street and began asking him questions about what occurred. Davis did not actually see the shooting. He was in the midst of nervous excitement, but under the circumstances it is hard to conclude that the statement was made before there was time for reflective thought. An investigation of the crime had already commenced; the officer was seeking out information and interrogating witnesses; and Davis was not even at the scene, having fled when the gunmen told everyone to leave. While there was nervous excitement because Davis was concerned that his cousin might die, we cannot conclude that the state proved all three elements of the excited utterance exception.
Nevertheless, even if the evidence was erroneously admitted, it was harmless beyond a reasonable doubt. The victim testified in far greater detail regarding the incident. Roche identified Monfiston, whereas Davis never did, and Roche testified that Monfiston had a gun in his hand. Davis did not actually see the crime occur, whereas Roche did. In essence, Davis’ testimony was cumulative to the much more detailed testimony of the victim. Furthermore, Monfiston himself testified that he was at the scene and got out of the vehicle, but claimed not to know that any guns were around. His testimony alone established his connection to the crimes. No mention of Davis’ observations was made in closing argument. Considering that Monfiston was tried for attempted first degree murder with a firearm and the jury found him guilty only of attempted voluntary manslaughter without possession of a firearm, the jury was clearly and conclusively not influenced by the excited utterance statement that Davis gave.
Finally, Monfiston claims that the court erred in failing to conduct a Faretta inquiry when he told the court that his attorney was not properly representing him. Prior to trial, the court held a Nelson[2] hearing regarding Monfiston’s request for his counsel, Barry Butin, to withdraw. At the hearing, Monfiston asserted that Butin was not complying with any of his wishes and was rendering ineffective assistance. After hearing Butin’s response, the court stated that it did not find that “there’s reasonable cause to believe that counsel is rendering ineffective representation.”
The judge stated that if Monfiston wanted to discharge his counsel, he could represent himself, hire an attorney to replace Butin, or keep Butin. She stated, “Those are your three choices. What would you like to do?” Monfiston responded, “I’ll represent myself, ma’am.” The court then stated:
You want to represent yourself? Mr. Butin, I’m going to have to go ahead and do a Faretta inquiry, but I have a number of other attorneys in the courtroom *65 and I would like to have an opportunity to ask all these questions without delaying the other attorneys.
And let me explain something to you Mr. Monfiston. Sometimes be careful for what you wish because if the Court finds, and as much as I would like to protect you about making a stupid decision, the law tells me I can’t do that. As long as I find that you knowingly and voluntarily and intelligently make a decision to represent yourself, I have to grant you your wish. And once I grant you your wish, you have to represent yourself during the trial with all of the rules of criminal procedure, without any type of benefit or breaking of the rules because you’re not a lawyer. So you have to know how to pick a jury, you’re going to have to know how to do strikes, you’re going to have to know how to do openings and do objections. I’m not going to be able to help you during the trial or give you any legal advice, and you’re going to have three codefendants with excellent attorneys. So you may be the one going down the pike if you can’t represent yourself properly. I’m only telling you this as friendly advice, so please think about it a few more minutes before your anger takes over in your decision and I’ll come back to you.
No further inquiry is recorded. At trial in January 2004, Monfiston was represented by Butin, and no further discussion regarding Butin’s representation occurred.
We agree with the state that Monfiston failed to preserve his claim at trial because he did not receive a ruling from the court. The state relies on Armstrong v. State, 642 So.2d 730 (Fla.1994), for support. In Armstrong, the defendant made a pretrial request for an MRI which could have been used in mitigation. The trial judge reserved ruling and apparently never issued a ruling. Thus, the court held that this claim was proeedurally barred.
It is clear from the comments of the judge that she did not reject Monfiston’s claim out of hand. Indeed, she asked him to think about his decision to represent himself, informing him of the disadvantages of doing so. Monfiston never came back and requested that the court rule on his request. There was no evidence that the judge in any way prevented him from doing so, as she said she would take it up later. Under these circumstances, Monfi-ston failed to secure a ruling on his request, thereby failing to preserve the issue.
This case is unlike Lewis v. State, 766 So.2d 288 (Fla. 4th DCA 2000). In Lewis, the defendant filed a pro se motion to discharge his court-appointed counsel and represent himself. The court struck the motion and failed to conduct a Faretta inquiry. On appeal, this court stated that the trial court erred in striking the motion, and found that Lewis’ request to represent himself was sufficiently unequivocal as to require the trial court to conduct a Faretta inquiry. In contrast to this case, the act of striking the motion to discharge counsel in Lewis was a rejection of Lewis’ request. Here, to the contrary, the court never denied or struck Monfiston’s request. We can only surmise from Monfiston’s subsequent silence that he heeded the warnings of the court as to the problems with self-representation and decided not to request removal of his lawyer.
For the foregoing reasons, we affirm Monfiston’s conviction and sentence. However, we note that there is a scrivener’s error in the judgment, as it lists the crime of which he was convicted as a first degree felony (1CF). Attempted voluntary manslaughter is a third degree felony. *66 We therefore remand for correction of the judgment.
STEVENSON, C.J., and MAY, JJ., concur.

. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

. Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973).