LAGOA, Judge.
The State appeals from an order granting defendant Jose Wong’s (“Wong”) motion to suppress. Because we find that the BOLO (“Be On The Lookout”) at issue provided law enforcement officers with the reasonable suspicion necessary to stop Wong’s automobile, we reverse the trial court’s order.
I. FACTUAL AND PROCEDURAL HISTORY
On January 3, 2007, Miami Beach police officers Cardell and Zieger were on a lunch break at a Subway restaurant located one block east of the Julia Tuttle Causeway when they received a BOLO regarding a car burglary at a parking lot located on 21st Street and Collins Avenue. The BOLO was issued three minutes after the dispatcher received a call from a witness reporting the car burglary, and identified a Hispanic male driving a silver or gray BMW.
Officer Cardell testified that Miami Beach has four exits to the mainland including the MacArthur Causeway, the Venetian Causeway, and the Julia Tuttle Causeway. Based on his fourteen (14) years of experience, Officer Cardell believed that the robbers would exit Miami Beach using the Julia Tuttle Causeway, in light of the location of the robbery and the relevant traffic patterns. The officers proceeded to station their police vehicle at the entrance to the Julia Tuttle Causeway.
Within two minutes of the officers receiving the BOLO, a silver BMW occupied by two Hispanic males drove by Cardell and Zieger’s police vehicle. After the officers stopped the vehicle, Wong, the driver, consented to a search, and the officers recovered the items stolen from the victim’s car.
The State charged Wong with burglary of an unoccupied conveyance and third degree grand theft stemming from a car burglary. Following his arrest, Wong filed a motion to suppress contending that the BOLO was insufficient to warrant an investigatory stop. At the conclusion of the suppression hearing, the trial court orally granted Wong’s motion. The trial court later entered a written order containing the following findings of fact: (1) the BOLO was issued for a Latin male in a gray BMW; (2) there was no further description of the gray BMW; (3) the BOLO did not include a direction of travel; (4) the stop was conducted two and a half to three miles from the scene of the crime; (5) the Julia Tuttle Causeway was not the most direct route off Miami Beach from the scene of the crime; (6) the Venetian Causeway would have been the most direct route; (7) the officers stopped two Latin males in a gray BMW; and (8) the officers testified that the stop was based on the *1156 BOLO report. Relying on Pantin v. State, 872 So.2d 1000 (Fla. 4th DCA 2004), the trial court concluded that the BOLO’s “ ‘bare bones’ description was insufficient to establish a basis for the stop.” This appeal ensued.
II. ANALYSIS
We begin our analysis by noting that this Court is not bound by our sister court’s decision in Pantin. We are, however, bound by this Court’s decision in State v. Gelin, 844 So.2d 659 (Fla. 3d DCA 2003), which is directly on point.
In Gelin, this Court reversed the trial court’s order granting the defendants’ Motion to Suppress. In Gelin, the detective received a BOLO regarding a crime committed in Miami Beach. The BOLO provided law enforcement with neither a direction of travel nor a further description of the occupants.
At the time of the BOLO, Detective King was headed westbound on the MacArthur Causeway on his way home from an off-duty detail. The detective was in an unmarked police van, in full uniform and in possession of a police radio. The BOLO description identified a white van with two black males who were involved in a robbery inside the City of Miami Beach city limits.
In response to the BOLO, Detective King pulled over on the MacArthur Causeway because he believed, in light of the location of the robbery, that the individuals would leave the beach area through the MacArthur Causeway.... [A] white van, meeting the BOLO description, and heading westbound on the MacArthur Causeway, passed the detective. The detective immediately began to pursue the van.... The defendants were in a white van as described in the BOLO, the only variation being that there were additional suspects in the back cargo area of the vehicle.
Id. at 660-61.
This Court concluded in Gelin that the BOLO provided law enforcement with “the reasonable suspicion necessary to follow and ultimately stop the defendants.” Id. at 660. Because the BOLO in Gelin is indistinguishable from the BOLO at issue here, we find that Gelin is controlling and we reverse the trial court’s order granting the defendant’s motion to suppress.
Additionally, we conclude that the trial court erred in finding that “the Julia Tuttle Causeway was not the most direct route off Miami Beach from the scene of the crime” but instead that “the Venetian Causeway would have been the most direct route.” A court must accept evidence which “is neither impeached, discredited, controverted, contradictory within itself, or physically impossible. This rule is plainly applicable here. Nothing justifies a factual finding contrary to the officers’ testimony on the key issue in this case: the basis of the initial stop of [the defendant’s] car.” State v. Fernandez, 526 So.2d 192, 193 (Fla. 3d DCA 1988) (citations omitted). Officer Cardell’s testimony regarding the route the perpetrators of the robbery would take to exit Miami Beach was “neither impeached, discredited, controverted, contradictory within itself, or physically impossible.” Id. Because the trial court was required to accept this evidence, it was error to grant the motion to suppress based on this finding. See State v. Casey, 821 So.2d 1187 (Fla. 3d DCA 2002).
Reversed and remanded.
SALTER, J., concurs.