DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE OF FLORIDA,**
Appellant,

v.

**PHAROH JEMISON,**
Appellee.

No. 4D14-2497

[ August 12, 2015 ]

Appeal of non-final order from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Andrew L. Siegel, Judge; L.T. Case No. 11015520CF10A.

Pamela Jo Bondi, Attorney General, Tallahassee, and Matthew Steven Ocksrider, Assistant Attorney General, West Palm Beach, for appellant.

Carey Haughwout, Public Defender, and James W. McIntire, Assistant Public Defender, West Palm Beach, for appellee.

TAYLOR, J.

The State appeals an order granting the defendant's motion to suppress. We conclude that, under the totality of the circumstances, the police had reasonable suspicion to stop the defendant's vehicle where, within six minutes of receiving a BOLO alert, an officer saw the defendant's vehicle—which matched the BOLO description—traveling on the only road of escape from the location of the burglary, and where the defendant later took evasive driving actions. We therefore reverse.

Shortly before noon one day, Officer Bennett responded to a BOLO regarding a burglary at an address in a residential development. The BOLO provided a description of a white Tacoma pick-up truck, newer model, with dark tinted windows, heading in an unknown direction. The BOLO did not state the number of occupants in the vehicle, nor did it describe any occupants in the vehicle. However, Officer Bennett was aware that the victim was the one who called and gave the information leading to the BOLO. The 911 caller left a phone number where he could be reached.

Officer Bennett immediately drove to the development where the burglary occurred. He waited at a location on Nob Hill Road because he knew that the only way to leave the development was by going either north or south on Nob Hill Road, and that vehicles "cannot get out from the other side" of the development. Traffic was very light. About six minutes after receiving the BOLO, he saw a truck matching the BOLO description.

Without activating his lights or sirens, Officer Bennett followed the truck on Nob Hill Road. He continued to follow the truck into Cooper City, which is where Nob Hill Road becomes Palm Avenue. He followed the truck for "no more than ten minutes," during which time the driver of the truck did not violate any laws.

The truck went into a neighborhood and drove in circles for a while. Officer Bennett acknowledged that this may have indicated the driver was lost, but he also explained that the truck's license plate was registered to an address about ten minutes away. Officer Bennett asked the dispatcher to send additional patrol units.

Two other officers simultaneously converged into the area. At that point, the truck was stopped at a red light at the intersection of 52nd Street and Palm Avenue. The truck was sitting behind another vehicle in the right lane of 52nd Street.

Officer Bennett testified that when the two other officers arrived, the truck jumped the right curb, crossed over the median of grass by the sidewalk, went around the car in front of him, and made a right turn without stopping at the red light. When asked whether there was an officer behind him when the defendant ran the red light, Officer Bennett replied: "I was the only one there." The defendant then continued north on Palm Avenue. Later, the defendant was issued a ticket for running the red light.

Officer Garcia was one of the other officers who responded to the area where Officer Bennett was following the truck. Officer Garcia was on Palm Avenue with his lights activated and could see the truck at the intersection. He described what he saw when the defendant made a right turn onto Palm Avenue: "I saw the white pickup truck stop and begin to accelerate [at] a high rate of speed, coming northbound on Palm Avenue."

The defendant ultimately was apprehended and charged by information with aggravated fleeing or eluding (high speed), aggravated assault on a law enforcement officer, burglary of a conveyance, felony petit theft, resisting an officer without violence, and possession of cannabis.

2

The defendant filed a motion to suppress, arguing that "the attempted stop [was] unlawful and therefore should be suppressed along with all other criminal activity, offenses or evidence gathered therefrom."[1]

The hearing on the motion to suppress established the facts set forth above. After the hearing, the trial court granted the motion to suppress. The court's reasoning was somewhat unclear,[2] but the court appeared to find that: (1) there was not enough information in the BOLO to justify the stop; and (2) the defendant did not commit a traffic infraction. The State appeals.

"A trial court's ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness and the court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court's ruling." *Terry v. State*, 668 So. 2d 954, 958 (Fla. 1996). In reviewing a motion to suppress, an appellate court presumes the trial court's findings of fact are correct and reverses only those findings not supported by competent substantial evidence. *Black v. State*, 59 So. 3d 340, 344 (Fla. 4th DCA 2011). The trial court's conclusions of law, however, are reviewed de novo. *Id.*

"For an investigatory traffic stop to be lawful, the police officer must be

---

[1] The premise of the motion to suppress was flawed because the defendant argued that the *attempted* stop was unconstitutional, even though it is well-settled that a seizure does not occur until the police use physical force or the defendant submits to a show of authority. *See California v. Hodari D.*, 499 U.S. 621 (1991). For some reason, however, the prosecutor failed to present evidence or argument regarding the defendant's alleged conduct of fleeing and eluding the police after making the right turn. Such evidence, had it been presented, would have compelled the trial court to deny the motion to suppress regardless of whether the initial attempt to stop the defendant was justified. *See State v. Kirer*, 120 So. 3d 60 (Fla. 4th DCA 2013) (if an officer orders the driver of a vehicle to stop and the driver then commits the crime of fleeing or attempting to elude, the police have probable cause to stop the driver regardless of whether the initial attempt to stop the driver was justified).

[2] On the one hand, the trial judge indicated that he would not have granted the motion to suppress had the officer stopped the defendant immediately after receiving the BOLO—which would suggest that the BOLO provided reasonable suspicion. On the other hand, the trial judge stated that "there wasn't enough information in the BOLO" and that he had a problem with the BOLO because there were "not specifics with regard to the Tacoma at all."

able to point to specific and articulable facts that warrant intrusion upon the constitutionally protected interests of the private citizen." *Pantin v. State*, 872 So. 2d 1000, 1002 (Fla. 4th DCA 2004) (citation and quotation marks omitted). "Such facts must point to a reasonable, well-founded suspicion that the person has committed, is committing, or is about to commit a criminal offense, and a mere hunch is insufficient to meet this constitutional burden." *Id.* (citations and quotation marks omitted).

The essence of the reasonable suspicion standard "is that the totality of the circumstances—the whole picture—must be taken into account." *United States v. Cortez*, 449 U.S. 411, 417 (1981). The following factors are relevant in assessing whether a vehicle stop pursuant to a BOLO was supported by a founded suspicion: "(1) the length of time and distance from the offense; (2) [the] route of flight; (3) [the] specificity of the description of the vehicle and its occupants; and (4) the source of the BOLO information." *Hunter v. State*, 660 So. 2d 244, 249 (Fla. 1995).

A BOLO providing a "bare bones" description of a vehicle, without more, is insufficient to create the reasonable suspicion necessary for a traffic stop. *See Pantin*, 872 So. 2d at 1001-03 (a BOLO for a "stolen late-model two-door Mitsubishi with one occupant" provided only a "bare bones description" and was insufficient where the BOLO lacked the location where the car was stolen and the officer did not recall whether it contained any information about the model, color, or window tinting of the vehicle, nor did he recall any information about the speed, direction, or route of the vehicle); *see also Sapp v. State*, 763 So. 2d 1257, 1258-59 (Fla. 4th DCA 2000) (a BOLO for a "newer white, four-door vehicle containing at least two black males" near a specific address was insufficient where the BOLO provided no information as to the speed, direction, make or model of the car, the car was stopped some 2 1/2 to 3 1/2 hours after the BOLO was issued, and the officer did not testify that appellant engaged in any suspicious conduct or activity consistent with guilt); *Walker v. City of Pompano Beach*, 763 So. 2d 1146, 1148-49 (Fla. 4th DCA 2000) (no reasonable suspicion to stop a vehicle based on a BOLO for a "small red colored vehicle Nissan/Toyota type" where there were no details regarding the crime, there was no information about the perpetrators or how they left the scene, and there was no evidence of flight from the police or other evasive conduct); *M.M. v. State*, 80 So. 3d 1125, 1127 (Fla. 4th DCA 2012) (a vague description simply would not justify a law enforcement officer in stopping every individual who might possibly meet that description).

By contrast, even where a BOLO does not provide significant details, reasonable suspicion can arise if a vehicle matches the BOLO description and there are additional supporting factors. *See Monfiston v. State*, 924

So. 2d 61, 63 (Fla. 4th DCA 2006) (finding reasonable suspicion to stop the vehicle where, although the BOLO did not provide significant details, it matched the description of the vehicle stopped—a dark-colored Ford Expedition, the vehicle was traveling in the direction indicated by the BOLO, the vehicle traveled for a distance without its lights on, and the vehicle immediately changed directions after the driver observed the officer); *State v. Wong*, 990 So. 2d 1154, 1155-56 (Fla. 3d DCA 2008) (BOLO identifying a silver or gray BMW driven by a Hispanic male provided reasonable suspicion—even though the BOLO did not include a direction of travel taken by the vehicle—where a vehicle matching the BOLO description was 2.5 to 3 miles away from the scene of the crime and was at a location that the officer believed was the most likely exit to be used by the perpetrators)[3]; *State v. Gelin*, 844 So. 2d 659, 660-62 (Fla. 3d DCA 2003) (BOLO, which described a white van with two black males but provided no direction of travel and no further description of the occupants, gave the police reasonable suspicion to conduct a stop where detective went to the location he believed the individuals would go to leave the area of the robbery); *see also Hunter*, 660 So. 2d at 249 (officer had founded suspicion to stop a vehicle based on a BOLO for a gray, 4-door vehicle with three black males and two black females: "The length of time and distance from the robbery, the source of the BOLO, the time, and, particularly, the specificity of the description of the vehicle's occupants, all support the stop.").

As the cases demonstrate, the assessment of reasonable suspicion in the context of a BOLO is a fact-specific inquiry. Here, a correct application of the law to the facts indicates that the police had reasonable suspicion to stop the defendant under the totality of the circumstances.

Assuming *arguendo* that the record supports the trial court's conclusion that the defendant did not commit any traffic violations,[4] the police had reasonable suspicion to stop the defendant's vehicle based on the BOLO and Officer Bennett's subsequent observations of the

[3] The *Wong* court noted that it was not bound by this court's decision in *Pantin*. *See Wong*, 990 So. 2d at 1156. Nonetheless, the two cases are not necessarily in conflict, as *Wong* is distinguishable from *Pantin* on its facts.

[4] Officer Garcia's testimony arguably supports the conclusion that the defendant did not run the red light, as Garcia's testimony suggests that the defendant was stopped at the light immediately before turning right onto Palm Avenue. As to the issue of whether the defendant drove over a curb, the trial court incorrectly found there to be a conflict in the testimony as to this issue. Nonetheless, the prosecutor never argued to the trial court how the defendant violated a traffic statute when he went over the curb.

defendant's vehicle. While the BOLO did not describe any occupants, it did describe the make, model, color, and dark window tinting of the suspected vehicle (i.e., a white Tacoma pick-up truck, newer model, with dark tinted windows). The officer went to the development where the burglary occurred. Although the BOLO did not indicate the direction of flight, the officer positioned himself on the only route of escape from the development. Within six minutes of the BOLO being issued, the officer saw a vehicle matching the exact description in the BOLO during a time when traffic was very light. The source of the BOLO information was not an anonymous tip, as the 911 caller had left his name and a phone number where he could be reached. In fact, the officer knew that the source of the BOLO information was the victim of the burglary. Finally, the officer observed additional suspicious activity, including the defendant circling a neighborhood, cutting in front of a vehicle to make a turn, and then driving evasively.

Under the totality of the circumstances, the police had reasonable suspicion to conduct the stop. We therefore reverse the order granting the motion to suppress and remand for further proceedings.

*Reversed and Remanded.*

MAY and KLINGENSMITH, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***