NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

DALTON CHAD SOUSA,                    )
                                      )
          Appellant,                  )
                                      )
v.                                    )     Case No. 2D15-1005
                                      )
STATE OF FLORIDA,                     )
                                      )
          Appellee.                   )
                                      )
_____       )

Opinion filed June 1, 2016.

Appeal from the Circuit Court for Collier
County; Frederick R. Hardt, Judge.

Howard L. Dimmig, II, Public Defender, and
Starr L. Brookins, Assistant Public
Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Jeffrey H. Siegal,
Assistant Attorney General, Tampa, for
Appellee.


BLACK, Judge.

          Dalton Sousa pleaded no contest to attempted robbery with a weapon

while wearing a mask and reserved his right to appeal the denial of the dispositive

motion to suppress. Because the officer did not have a well-founded suspicion of criminal activity justifying the stop, we reverse.

Corporal Booth was the only witness to testify during the evidentiary hearing on Sousa's motion to suppress. On June 9, 2013, at approximately 5:00 a.m., Corporal Booth received a BOLO from dispatch indicating that a robbery[1] had occurred in the area where he was patrolling. While in route to the scene of the crime, Corporal Booth learned that there were "three suspects with a firearm" and that "[t]hey had fled towards some apartments." Corporal Booth testified that the entire area consisted of apartments and that he could not recall which apartments the suspects fled toward. At some point, dispatch also provided that the suspects were males. Once Corporal Booth learned that Corporal Tipton had made contact with the victim, he proceeded to search for the suspects.

Corporal Booth soon observed a small vehicle with three occupants inside. He explained that it had been a quiet night, that he had not seen any vehicles on the road for some time, and that this was the first and only vehicle he saw since receiving the BOLO. As Corporal Booth followed the vehicle, he observed the passenger in the backseat "bouncing around and at points even appear[ing] to be laying [sic] down." Because Corporal Booth suspected that the vehicle occupants were involved in the recent criminal activity, he was looking for a reason to initiate a traffic stop. As he continued to follow the vehicle, he observed that it was "green, maybe a blue."

---

[1]Though the crime was described as a robbery, Sousa was actually charged with attempted robbery.

After following the vehicle for approximately two miles without observing any traffic violations or receiving any more information from dispatch, Corporal Booth conceded that while he did not have much to go on, he needed to stop the vehicle.[2] Corporal Booth based his suspicion on "[t]he back passenger bouncing around, laying [sic] down, three occupants, no other vehicles on the roadway when [he] was in that specific area where the crime had occurred." After initiating the stop and while walking toward the vehicle, he received a description of the suspects' vehicle from the Computer Aided Dispatch (CAD) report; the suspects' vehicle was reported to be red.

The trial court denied Sousa's motion to suppress finding that a short period of time had passed since the offense, the vehicle was encountered near the scene of the offense traveling in the opposite direction, the vehicle was small and occupied by three people, and the BOLO information was reliable because it came from another officer and from the victim.

> Appellate review of a motion to suppress is a mixed question of law and fact. Bautista v. State, 902 So. 2d 312, 314 (Fla. 2d DCA 2005). Deference is given to the trial court's factual findings if they are supported by competent and substantial evidence. Id. (citing Cillo v. State, 849 So. 2d 353, 354 (Fla. 2d DCA 2003)). However, this court has an "independent obligation to review the ultimate question of probable cause and reasonable suspicion" under a de novo standard to make certain law enforcement practices remain within constitutional parameters. Connor v. State, 803 So. 2d 598, 606 (Fla. 2001).

Crawford v. State, 980 So. 2d 521, 523 (Fla. 2d DCA 2007). "[S]everal factors must be considered in assessing the legality of a stop based on a BOLO: '(1) the length of time

---

[2]Corporal Booth testified that after he activated his lights to initiate the stop, the driver of the vehicle committed a traffic violation. Because this violation occurred after the stop had been initiated, it is not relevant to the stop.

and distance from the offense; (2) route of flight; (3) specificity of the description of the vehicle and its occupants; and (4) the source of the BOLO information.' " Rivera v. State, 771 So. 2d 1246, 1247 (Fla. 2d DCA 2000) (quoting Hunter v. State, 660 So. 2d 244, 249 (Fla. 1995)).

Corporal Booth did observe three people in a vehicle near the area where the crime had recently occurred, but a "vehicle's mere presence near the scene is insufficient to give rise to a reasonable suspicion that its occupants were connected to the recent [crime]." Batson v. State, 847 So. 2d 1149, 1151 (Fla. 4th DCA 2003). Further, the BOLO was vague. It provided only that three male suspects with a firearm fled toward apartments in an area that consisted entirely of apartments; there was no indication that the suspects fled in a vehicle rather than on foot or by other means. See Sumlin v. State, 433 So. 2d 1303, 1304 (Fla. 2d DCA 1983) ("A vague description simply will not justify a law enforcement officer in stopping every individual or vehicle which might possibly meet that description."); see also State v. Jemison, 171 So. 3d 808, 811 (Fla. 4th DCA 2015) ("A BOLO providing a 'bare bones' description of a vehicle, without more, is insufficient to create the reasonable suspicion necessary for a traffic stop.").

Additionally, the trial court's reliance on the vehicle description was misplaced because Corporal Booth did not receive a vehicle description or learn that the suspects even fled in a vehicle, for that matter, until after he initiated the stop. The trial court acknowledged that Corporal Booth "had the wrong color of the vehicle" but found that Corporal Booth was correct that the vehicle "was small and occupied by three persons." However, Corporal Booth never testified that the CAD report indicated that

the suspects' vehicle was small; he testified only that it was reported to be "older," "beat-up," and "red."[3]

Despite a "bare bones" BOLO description, an officer's suspicions of the occupants in a vehicle may become reasonable if the occupants match the BOLO description and "there are additional supporting factors." Jemison, 171 So. 3d at 812. But no such factors exist in this case. Cf. id. at 812-13 (holding that while the BOLO only provided a vehicle description and did not provide the number of occupants or the direction of travel, the officer had reasonable suspicion to stop the defendant's vehicle upon encountering the vehicle along the only possible escape route and observing the defendant "circling a neighborhood, cutting in front of a vehicle to make a turn, and then driving evasively"). Though Corporal Booth testified that the backseat passenger in the vehicle was acting suspiciously by "bouncing around" and "laying [sic] down," this activity is equally consistent with noncriminal activity. Cf. Carter v. State, 454 So. 2d 739, 740, 742 (Fla. 2d DCA 1984) (holding that the activities of the driver in the lawfully parked vehicle—looking to the front and back of the vehicle and bending toward the middle of the front seat—were "at least equally consistent with noncriminal activity"). Corporal Booth had nothing more than a mere or bare suspicion that the individuals in the vehicle were involved in the recent crime, which will not suffice. See Taylor v. State, 695 So. 2d 503, 506 (Fla. 2d DCA 1997). Because Corporal Booth's suspicion was not well founded, the motion to suppress should have been granted. See Nealy v. State,

---

[3]We also note that although the trial court found the BOLO information to be reliable because it came from the victim and another officer, Corporal Booth testified only that he obtained the BOLO information from dispatch. There was no testimony as to where that information originated.

652 So. 2d 1175, 1176-77 (Fla. 2d DCA 1995).  Accordingly, we reverse the denial of

the motion to suppress, reverse the convictions and sentences, and remand for

discharge.  See id. at 1177.

Reversed and remanded for discharge.


KELLY and MORRIS, JJ., Concur.