CONNER, J.,
dissenting.
I respectfully dissent from reversing the trial court for failing to grant the motion to suppress. I view the record evidence differently from the majority and give greater weight to certain facts.
I agree with the majority that the information in the BOLO was insufficient, by itself, to authorize an investigatory stop. I agree the lack of eye contact between the officer and the occupants of the vehicle was not a significant factor to consider. As the majority points out, there was no improper driving to justify a stop. But I disagree that there was no suspicious behavior, coupled with the minimal information regarding race and gender provided by the BOLO, which would support a finding by the trial court, or a determination by this Court, that “there is no indication the arresting officer saw the appellant en *479 gage in conduct suggesting ‘criminal activity [was] afoot.’ ”
The facts that I give more weight to than the majority are: (1) the length of time between the robbery and the stop; (2) the location of the stop, in relation to the location of the crime; (3) the fact that no other traffic was on the street where the stop was made; and, most importantly, (4) the observations of the officer regarding the suspicious appearance of Appellant, the seating pattern of the vehicle occupants, and the sudden popping up of a third occupant in the back seat.
Immediately after the crime occurred, at 9:54 a.m., calls started coming in to 911. Within three to four minutes after the crime occurred, the arresting officer was dispatched to respond. The officer was ten to fifteen blocks away from the crime scene when dispatched. It took him three to four minutes to arrive at the perimeter area to which he was directed. When he arrived at the perimeter area, he was approximately two blocks away from the crime scene. As he was traveling on Southwest 7th Street, he passed a red Dodge Charger travelling in the opposite direction. The Dodge Charger was the only other moving vehicle in the area at that time. The arresting officer testified that, as both cars passed each other, he noticed two occupants in the Dodge Charger, a driver and a passenger. The passenger, Appellant, was seated in the rear seat diagonally opposite the driver. He described the driver as a black male with dreads. He described the backseat passenger as follows:
Officer: The rear passenger was another black male, wearing the best I can describe it, would be a Sunday going to church hat type thing, drawn down to this eyebrow level hat.
State: Male hat or a female hat?
Officer: To me, being that I work the area, the only people that used to wear those are the grandmothers, going to Sunday church. Best I can describe it, would have been a turban or 1930’s flapper hat, looked like a bathing cap.
The officer found the seating arrangement of the occupants and the appearance of the passenger (Appellant) suspicious, so he made a U-turn on Southwest 7th Street to perform a traffic stop on the vehicle. Traveling eastbound directly behind the Dodge Charger, the officer testified that he activated his lights and the vehicle began to slow down. He testified that, as the vehicle started to slow down, a third black male, who had been concealed from the officer’s vision when the vehicles initially passed each other, suddenly appeared in the front passenger’s seat.
In denying the motion to suppress, the trial court noted that the arresting officer’s observations of the vehicle and its occupants amounted to reasonable suspicion. The trial court also noted there was no other vehicular traffic on the street. Finally, the trial court noted that the officer described the scene in the ease as if it were a scene from the movie Driving Ms. Daisy; he observed a passenger in the rear passenger side wearing an unusual hat drawn down to his eyes and, once he got behind the car, he identified an additional front seat passenger who had been crouched down when the cars initially passed. In regards to the description in the BOLO as two suspects fleeing on foot, as opposed to the three suspects being in a vehicle, the court cited case law to the effect that officers could unquestionably come to the conclusion that the persons on foot had joined a third “wheelman” in order to make their escape.
In my view, after weighing the credibility of the officer, the trial judge ruled *480 correctly. As we explained in State v. Jemison, 171 So.3d 808 (Fla. 4th DCA 2015), even where a BOLO does not provide significant details, reasonable suspicion can arise if the description is matched and there- are additional supporting factors. Id. at 812.
Like the majority, I am deeply disturbed by the record evidence showing that other officers were apparently stopping people just because of their race and gender. Such law enforcement behavior cannot be- condoned in a free society. But as the case law makes clear, the subjective motivations of law enforcement do not make evidence inadmissible under the Fourth Amendment. The Fourth Amendment is analyzed based on objective factors. Hurd v. State, 958 So.2d 600, 602 (Fla. 4th DCA 2007) (“The constitutional validity of a traffic stop depends on purely objective criteria. The objective test ‘asks only whether any probable cause for the stop existed,’ making the subjective knowledge, motivation, or intention of the individual officer involved wholly irrelevant.” (citation omitted) (quoting Holland v. State, 696 So.2d 757, 759 (Fla.1997))). Thus, I would affirm the denial of the motion to suppress.